## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

CHRISTOPHER JONES,

    Plaintiff,

v.

FORTERRA, INC.,
CHRIS MEYER,
RICHARD CAMMERER, JR.,
RAFAEL COLORADO,
MAUREEN HARRELL,
CHAD LEWIS,
CLINT MCDONNOUGH,
JOHN MCPHERSON,
JACQUES SARRAZIN, and
KARL H. WATSON, JR.,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Christopher Jones ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought by Plaintiff against Forterra, Inc. ("Forterra" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed

transaction, pursuant to which the Company will be acquired by Quikrete Holdings, Inc. ("Quikrete") through its subsidiary Jordan Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On February 22, 2021, Forterra issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated February 19, 2021, to sell Forterra to Quikrete. Under the terms of the Merger Agreement, each Forterra stockholder will be entitled to receive $24.00 in cash for each Forterra share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $2.74 billion.

3. Concurrently with the execution of the Merger Agreement, Forterra US Holdings, LLC (the "Principal Stockholder"), an affiliate of Lone Star North America Acquisitions LP, which owns 34,907,250 shares, representing approximately 52.7% of the outstanding Forterra shares and a majority of all votes entitled to be cast with respect to the adoption of the Merger Agreement, executed and delivered a written consent adopting the Merger Agreement and the Proposed Transaction. The Company's minority stockholders do not have a vote on the Proposed Transaction.

4. On March 24, 2021, Forterra filed a Schedule 14C Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Forterra stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Forterra management's financial projections and the data and inputs underlying the valuation analyses performed by the Company's financial advisor Citigroup Global Markets Inc. ("Citi"); (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Company insiders. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of

the Exchange Act.

5. In short, unless remedied, Forterra's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Forterra operates and maintains three manufacturing plants in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of Forterra common stock.

10. Defendant Forterra is a Delaware corporation with its principal executive offices located at 511 East John Carpenter Freeway, Suite 600, Irving, TX 75062 and manufacturing facilities in Henderson and Grand Junction, Colorado. Forterra is a leading manufacturer of water and drainage pipe and products in the U.S. and Eastern Canada for a variety of water-related infrastructure applications, including water transmission, distribution, drainage and stormwater systems. The Company's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "FRTA."

11. Defendant Chris Meyer ("Meyer") has been Chairman of the Board since July 2017 and a director of the Company since October 2016. Defendant Meyer has been Senior Managing Director of Lone Star North America Acquisitions, L.P. since April 2018, where he leads all acquisition efforts for Lone Star Funds ("Lone Star") in North America.

12. Defendant Richard Cammerer, Jr. ("Cammerer") has been a director of the Company since April 2018. Defendant Cammerer has been Managing Director of Lone Star North America Acquisitions, L.P. since January 2020.

13. Defendant Rafael Colorado ("Colorado") has been a director of the Company since September 2018. Defendant Colorado has been a Managing Director of Hudson Advisors L.P. ("Hudson"), a related party of Lone Star, since April 2019.

14. Defendant Maureen Harrell ("Harrell") has been a director of the Company since February 2020. Defendant Harrell has been a Managing Director of Hudson since June 2019.

15. Defendant Chad Lewis ("Lewis") has been a director of the Company since April 2018. Defendant Lewis has been a Director of Hudson since January 2019.

16. Defendant Clint McDonnough ("McDonnough") has been a director of the

4

Company since October 2016.

17. Defendant John McPherson ("McPherson") has been Lead Director and non-executive Vice Chairman of the Board since June 2019, and a director of the Company since October 2016.

18. Defendant Jacques Sarrazin ("Sarrazin") has been a director of the Company since October 2016.

19. Defendant Karl H. Watson, Jr. ("Watson") has been Chief Executive Officer ("CEO") and a director of the Company since July 2019.

20. Defendants identified in paragraphs 11 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Quikrete is a privately owned family business founded in 1940. It is a leading buildings materials company based in Atlanta, Georgia. Quikrete's portfolio ranges from its Quikrete branded concrete and mortar mixes to precast and steel pedestrian and vehicular bridges, including brands such as Quikrete, Spec Mix, QPR, Pavestone, Custom Building Products, Rinker Materials, and Contech Engineered Solutions. Quikrete services the U.S. and Canadian new construction and repair and remodeling residential, commercial, and infrastructure markets.

22. Merger Sub is a Delaware corporation and wholly owned subsidiary of Quikrete.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

23. Forterra is a manufacturer of concrete pipe and precast products and ductile iron pipe in the U.S. and Eastern Canada for a variety of essential water-related infrastructure applications. Its products and services are used in the construction, maintenance, repair and replacement of water drainage, distribution and transmission systems. The Company's

5

manufacturing and distribution network, with 77 active manufacturing facilities with capacity, allows it to serve most major markets in the United States and Eastern Canada. The Company manufactures both water drainage pipe and precast structures (used primarily for storm water and drainage applications) and water transmission and distribution pipe (used primarily to transport potable water and as a component of wastewater systems) and believes its complementary product portfolio is well positioned to serve both (i) the storm water and wastewater infrastructure market and (ii) the potable water transmission and distribution market. Forterra serves a diverse set of end markets, including infrastructure, residential, and non-residential construction, which allows us to benefit from both secular and cyclical growth across each of these end-markets. The infrastructure, residential, and non-residential end markets in the U.S. and Eastern Canada have different growth drivers and operating dynamics, and the cyclical performance of these markets has historically been staggered during different stages of the broader economic cycle serving to mitigate the cyclical impact of any one single market on our business. In addition, given the nature of water as a basic necessity, municipalities generally repair and replace their existing water and wastewater infrastructure.

24.     Forterra's operating segments are (i) Drainage Pipe & Products and (ii) Water Pipe & Products.

25.     On February 24, 2021, the Company announced its fourth quarter and full year 2020 financial results and business highlights. For the full year 2020 Forterra reported: increased net sales by 4.2% to $1,594.5 million as compared to $1,529.8 million for 2019; increased gross profit by 27.1% to $376.7 million as compared to $296.4 million in the prior year, with gross profit margin improved by more than 400 basis points year-over-year; net income for 2020 was $64.5 million, compared to a net loss for 2019 of $7.3 million; adjusted EBITDA increased by 36.8% to

$279.0 million as compared to $203.9 million in 2019, with adjusted EBITDA margin improved by more than 400 basis points year-over-year to 17.5% in 2020, compared to 13.3% in 2019; and $243.2 million of operating cash flow in 2020 compared to $146.8 million in 2019. Reflecting on the Company's results, defendant Watson commented:

> I want to thank all of the Forterra team members on the exceptional performance they delivered in 2020 while working diligently to keep safe and healthy during the pandemic. Our strong performance in earnings growth, increased cash flow, and debt reduction that produced a more robust balance sheet demonstrate the results of the continuing execution of our five improvement pillars, which are specifically designed to earn a full and fair return on the products we produce and the capital we have deployed. Our fourth quarter results reflect another step forward toward achieving this aim. We had a solid finish to the year with continued pricing improvements while holding our costs relatively flat. We also saw the predicted improvements in year-over-year shipment volume trends this quarter, especially in our Drainage business, as compared to quarters earlier in the year. As a result, we exceeded our annual earnings and debt reduction guidance that were provided at the end of the third quarter. Net income for the year was $65 million, exceeding our guidance of $30 million to $40 million, and Adjusted EBITDA for the year was at the top end of our guidance of $265 million to $280 million. Voluntary debt repayment was $204 million, exceeding the guidance of $170 million to $185 million. This voluntary debt prepayment, combined with improved earnings, reduced our Net Leverage Ratio2 to 3.7x at year-end.
>
> In recognition of the collective efforts of our team in rising to overcome the unprecedented challenges of 2020 and their delivery of the much-improved results for the year, during the fourth quarter we accrued a discretionary 2% profit sharing contribution to team members' 401K (U.S.) or DCPP (Canada) retirement accounts for 2020. The total contribution was $5.2 million, comprised of $2.9 million in Drainage, $2.0 million in Water, and $0.3 million in Corporate. This contribution demonstrated our commitment to investing in our people.
>
> Looking ahead, we remain focused on the execution of our five primary improvement pillars: health and safety, plant-level operational discipline, enhanced commercial capabilities, working capital efficiency, and general and administrative expense effectiveness. For 2021, we expect our focus on these pillars to further enhance our results. While challenges from the pandemic persist, and some of our key raw material prices have increased, our team will make continued progress across all of our five improvement pillars. We are very proud of what we have accomplished 2020, but even more excited about what we can still achieve in 2021 and beyond.

**The Proposed Transaction**

26. On February 22, 2021, Forterra issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

IRVING, Texas and ATLANTA, Feb. 22, 2021 -- Forterra, Inc. ("Forterra" or "the Company") (NASDAQ:FRTA), a leading manufacturer of water and drainage infrastructure pipe and products in the United States and Eastern Canada, today announced that it has entered into a definitive agreement under which Quikrete Holdings, Inc. ("Quikrete") will acquire all outstanding shares of Forterra for $24.00 per share in an all cash transaction valued at approximately $2.74 billion, including outstanding debt.

The transaction, which was unanimously approved by the Forterra Board of Directors, represents a premium of approximately 38.5% to Forterra's 90-day volume-weighted average share price on February 19, 2021. Upon completion of the transaction, Forterra will become a privately held company.

"Forterra and Quikrete are an ideal strategic fit, and this combination is a natural next step for our company, enabling us to better serve our customers across the company on their concrete projects from start to finish. We are excited to grow our capabilities in the potable water distribution market through Forterra's well-respected U.S. Pipe business," said Will Magill, CEO of Quikrete Holdings, Inc. "We are excited to welcome the Forterra team and bring our two great companies together."

"We are pleased to announce this transaction with Quikrete, which delivers a compelling cash premium to our shareholders," said Forterra CEO Karl Watson, Jr. "We admire Quikrete's impressive 80 year history and commitment to delivering superior service and products to customers. Over the past two years, we have made significant progress executing on our five improvement pillars of safety, plant-level operational discipline, enhanced commercial capabilities, working capital efficiency, and general and administrative expense effectiveness. Today's announcement advances that progress and is a testament to our team members' hard work and commitment to Forterra. We look forward to working with Quikrete to build on our positive momentum and achieve even greater success together."

"Following a thorough review of the opportunities available to Forterra to deliver the greatest value to shareholders, the Forterra Board of Directors unanimously determined that entering into this agreement with Quikrete and becoming a private company again is the best path forward to maximize value," said Chris Meyer, Chairman of the Forterra Board. "The transaction with Quikrete represents an exciting new chapter for Forterra – one that could not have been achieved without the leadership from the entire management team and the dedication of all Forterra team members."

In light of this announcement, Forterra will issue earnings as planned after the close of business February 24, 2021, but will not be hosting its previously announced fourth quarter and full year 2020 earnings conference call on February 25, 2021.

**Approvals**

An affiliate of Lone Star Funds ("Lone Star"), a global private equity firm, acquired Forterra in 2015 and has maintained a majority ownership since the Company's initial public offering in 2016. Following execution of the merger agreement, Lone Star, which owns approximately 53% of the Company's outstanding shares of common stock, approved the transaction by written consent. No further action by Forterra's shareholders is needed or will be solicited in connection with the merger.

The transaction is expected to close in the fourth quarter of 2021, subject to customary closing conditions, including receipt of clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

**Insiders' Interests in the Proposed Transaction**

27. Forterra insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will receive unique benefits in connection with the Proposed Transaction not available to Plaintiff and the other public stockholders of Forterra.

28. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Quikrete. Pursuant to the Merger Agreement, all outstanding stock options, restricted stock units ("RSUs"), and performance based restricted stock units ("PSUs") will vest and convert into the right to receive cash payments. The following table summarizes the amount of compensation Company insiders stand to receive for their equity awards:

| Name | Number of Shares Subject to Vested Company Stock Options | Total Expected Value of Vested Company Stock Options ($)(1) | Number of Shares Subject to Unvested Options | Total Expected Value of Unvested Options ($)(1) | Number of Shares Subject to Unvested Company RSUs | Total Expected Value of Unvested Company RSUs ($)(2) | Number of Shares Subject to Unvested Company PSUs | Total Expected Value of Unvested Company PSUs ($)(3) | Total Expected Value of Company Stock Options and Company RSUs and PSUs ($)(1)(2)(3) |
|---|---|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | | | |
| Karl H. Watson Jr. | — | — | — | — | 250,310 | 6,007,440 | 384,634 | 9,231,216 | 15,238,656 |
| Charlie Brown | 513,547 | 9,611,526 | 131,568 | 2,599,784 | 129,802 | 3,115,248 | 51,692 | 1,240,608 | 16,567,166 |
| Richard Hunter | — | — | — | — | — | — | — | — | — |
| Vikrant Bhatia | 217,060 | 3,633,263 | 81,236 | 1,605,223 | 88,968 | 2,135,232 | 38,370 | 920,880 | 8,294,598 |
| Lori Browne | 188,741 | 2,886,513 | 89,184 | 1,762,276 | 89,505 | 2,148,120 | 36,150 | 867,600 | 7,664,509 |
| **Directors** | | | | | | | | | |
| Clint McDonnough | 2,810 | 16,860 | — | — | 11,990 | 287,760 | — | — | 304,620 |
| John McPherson | 114,951 | 2,192,395 | 112,141 | 2,175,535 | 15,869 | 380,856 | — | — | 4,748,786 |
| Jacques Sarrazin | 2,810 | 16,860 | — | — | 11,990 | 287,760 | — | — | 304,620 |

29.  Moreover, in connection with the Proposed Transaction, certain Forterra insiders are set to receive substantial cash bonus payments under the Company's Long Term Incentive Plan ("LTIP"), as set forth in the following table:

| Name | Number of LTIP Pool Units | Total Expected Value of LTIP Pool Units |
|---|---|---|
| Lori Browne | 17,500 | $ 699,000 |
| Clint McDonnough | 1,000 | $ 40,000 |
| John McPherson | 1,000 | $ 40,000 |
| Jacques Sarrazin | 1,000 | $ 40,000 |

30.  In addition, under the terms of the Company's 2020 Annual Incentive Plan (the "AIP"), accrued bonus bank balances are paid out to all participants, including executive officers, immediately upon the occurrence of a change in control. The following table summarizes the payments that Company insiders will receive in connection with the AIP:

| Name | Bonus Bank Value ($) |
|---|---|
| Karl H. Watson Jr. | $ 700,960 |
| Charlie Brown | $ 412,960 |
| Vikrant Bhatia | $ 298,340 |
| Lori Browne | $ 183,043 |

31.  Further, if they are terminated in connection with the Proposed Transaction, Forterra's named executive officers are set to receive substantial cash severance payments, as set forth in the following table:

| Name | Cash(2) | Equity(3) | Perquisites/ Benefits(4) | Total |
|---|---|---|---|---|
| Karl H. Watson, Jr. | $ 4,200,960 | $ 15,238,656 | $ 15,896 | $ 19,455,512 |
| Charlie Brown | $ 1,442,960 | $ 16,567,166 | $ 15,896 | $ 18,026,022 |
| Vikrant Bhatia | $ 1,298,340 | $ 8,294,598 | $ 15,536 | $ 9,608,834 |
| Lori Browne | $ 1,591,778 | $ 7,664,509 | $ — | $ 9,256,287 |
| Richard Hunter(1) | $ — | $ — | $ — | $ — |

**The Proxy Statement Contains Material Misstatements or Omissions**

32. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Forterra's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to exercise their appraisal rights.

33. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Forterra management's financial projections and the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Citi; (ii) the background of the Proposed Transaction; and (iii) potential conflicts of interest faced by Company insiders.

*Material Omissions Concerning Forterra Management's Financial Projections and Citi's Financial Analyses*

34. The Proxy Statement omits material information regarding Company management's financial projections.

35. For example, the Proxy Statement sets forth that at a December 30, 2020 Board meeting:

> Company management presented to the Board five-year management projections for the Company's forecasted performance (the "Initial Projections"). The Board discussed, with Company management and its advisors, the process undertaken to prepare the Initial Projections and the assumptions that would be appropriate to use in projections for each of the Company's business units. The Board directed management to update the Initial Projections to reflect the Board's feedback and to present such updated projections for further analysis by the Board at a subsequent meeting.

* * *

11

> On January 5, 2021, the Board held a meeting via teleconference, attended by members of Company management and representatives of Gibson Dunn and representatives of Citi, to, among other things, discuss management's updated five-year projections for the Company's forecasted performance, and to receive a process update regarding the interest by third parties to acquire the Company and the indications of interest recently submitted by Party A and Party B and the Parent proposal. The Board reviewed management's updated five-year projections for the Company's forecasted performance, which reflected the feedback previously provided by the Board. Company management reviewed with the Board the key changes to the assumptions used in the projections as compared to the Initial Projections. The Board, along with management and the Company's advisors, discussed and considered pricing, volume and other sensitivities that could impact the assumptions used in the projections and overall fair value of the Company.

Proxy Statement at 20. The Proxy Statement, however, fails to disclose: (i) the Initial Projections; (ii) details of the Board's feedback provided to Company management at the December 30, 2020 Board meeting; (iii) the key changes to the assumptions used in the updated projections as compared to the Initial Projections; and (iv) the pricing, volume and other sensitivities discussed at the January 5, 2021 Board meeting.

36. The Proxy Statement also fails to disclose all line items underlying the calculation of adjusted EBITDA and unlevered free cash flow.

37. Additionally, the Proxy Statement describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Forterra's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to seek appraisal.

38. With respect to Citi's *Comparable Companies Analysis* and *Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions observed, respectively.

39. With respect to Citi's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered after-tax free cash flows of the Company in a mid-cycle terminal year used to calculate the terminal value of the Company; (ii) quantification of the Company's terminal value; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.7% to 11.0%.

40. With respect to the share price targets observed by Citi, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

41. With respect to the implied premiums paid in selected transactions observed by Citi, the Proxy Statement fails to disclose the transactions observed and the individual premiums for each of the transactions.

42. The omission of this information renders the statements in the "Opinion of Financial Advisor to the Company" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

43. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

44. For example, the Proxy Statement sets forth that at a December 30, 2020 Board meeting:

> Representatives of Gibson Dunn discussed with the Board, among other things, the Board's fiduciary duties in connection with its consideration of a potential sale of the Company, and further discussed the evaluation of any potential conflict of interest of each of the directors arising from any relationships with any of the potential bidders or otherwise.

*Id*. at 20. Similarly, at a January 18, 2021 Board meeting:

> Representatives of Gibson Dunn also discussed with the Board its fiduciary duties in connection with potential conflicts of interest arising in connection with a

>transaction, including any potential conflicts resulting from past relationships between any of the bidders and any members of the Board or Company management, any current or former engagements of the Company's advisors by any of the bidders or the Principal Stockholder. . . .

*Id.* at 21. The Proxy Statement, however, fails to disclose the details of the potential conflicts of interest discussed and whether the Board or the Company's legal advisors determined any conflicts of interest exist.

45. Moreover, the Proxy Statement sets forth that "[o]n February 12, 2021, representatives of Citi, as instructed by the Board, communicated to representatives of Party A that its latest proposal was unacceptable to the Company because the proposed price per share included in Party A's indication of interest was inadequate." *Id.* at 24. The Board subsequently negotiated the final outstanding terms of the Merger Agreement with Quikrete and executed the Merger Agreement on February 19, 2021. Yet, the Proxy Statement fails to disclose whether Party A responded to Citi or the Company and, if so, the details of Party A's response.

46. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

47. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

48. For example, in the February 21, 2021 press release announcing the Proposed Transaction, Will Magill, CEO of Quikrete states, "[w]e are excited to welcome the Forterra team and bring our two great companies together." Yet, the Registration Statement fails to disclose whether any of Forterra's executive officers or directors is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-

14

related discussions and negotiations that occurred between Quikrete and Forterra's executive officers, including who participated in all such communications, when they occurred and their content. The Registration Statement further fails to disclose whether any of Quikrete's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

49. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Forterra's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50. The omission of this material information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

51. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the deadline to exercise appraisal rights in connection with the Proposed Transaction, Plaintiff and the other Forterra stockholders will be unable to make an appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

52.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

53.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Forterra management's financial projections, the data and inputs underlying the valuation analyses performed by Citi, the background of the Proposed Transaction, and potential conflicts of interest faced by Company insiders.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to exercise their appraisal rights in connection with the Proposed Transaction.

56.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive

relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

58. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59. The Individual Defendants acted as controlling persons of Forterra within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Forterra and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

62. In addition, as the Proxy Statement sets forth at length, and as described herein, the

Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Forterra's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction unless and until defendants disclose and disseminate the material information identified above to Forterra stockholders ;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 31, 2021

Respectfully submitted,

*/s/ Richard A. Acocelli*
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*